LEWIS et al. v. HOUSTON OIL CO. OF TEXAS. (No. 164.)

(Court of Civil Appeals of Texas. Beaumont. Nov. 3, 1917. Rehearing Denied Nov. 14, 1917.)

1. ACKNOWLEDGMENT ☞37(2)—SUFFICIENCY AS TO MARRIED WOMEN.

An acknowledgment of a quitclaim deed dated in 1859, reciting that all the grantors, who were married women, "were examined separately and apart from their husbands, and they said they were acquainted with the circumstances and transaction and did not wish to retract what was done," was sufficient to show acknowledgment of the women separate and apart from their husbands and that the deed was fully explained to them, under Act April 30, 1846 (Acts 1st Leg. p. 156), as to separate examination and essentials of acknowledging clause. (Per Brooke, J.)

2. APPEAL AND ERROR ☞931(1)—FINDINGS SUPPORTED BY EVIDENCE—REVIEW.

The conclusions of the trial court not being of record, and there being testimony upon which to base the findings Court of Civil Appeals must adopt the same, if any of the theories advanced would uphold the findings.

King, J., dissenting in part.

Appeal from District Court, Newton County; A. E. Davis, Judge.

Action by Henry Lewis and others against the Houston Oil Company of Texas. Judgment for defendant, and plaintiffs appeal. Affirmed.

Warren & Conn, of Houston, for appellants. Kennerly, Williams, Lee & Hill, of Houston, for appellee.

BROOKE, J. The appellants brought suit in the district court of Newton county against the appellee, to recover an undivided three-fifths interest in 250 acres of the

Lewis Donaho headright in that county. The case was tried before the court without a jury, and judgment was rendered in favor of the appellee for all the land in controversy.

The appellants did not request the trial judge to file his findings of fact and conclusions of law, but have perfected this appeal, claiming that they have title to the land through and by virtue of the following:

(1) Patent from the state of Texas to Lewis Donaho for one-half league and labor, including the land in controversy, dated December 12, 1845.

(2) A supposed lost deed from Lewis Donaho to William McFarland, dated prior to 1840, conveying the one-half league and labor. Neither the original nor a copy of this supposed deed was found, nor was there any direct evidence to prove its execution, appellants depending upon circumstances to show its execution.

(3) Supposed proceedings in the estate of William McFarland in Jasper county, in which Thos. S. McFarland was appointed administrator of the estate. The appellants relied upon circumstances to show this administration and appointment.

(4) A supposed lost deed from Thos. S. McFarland, as administrator, to Seth Swift, conveying 1,414 acres of the Donaho land. The execution of this deed was sought to be shown by circumstances, there being no direct evidence of its execution.

(5) The supposed authorization or ratification of the above administrator's deed from McFarland to Swift. This was a fact necessary to be presumed, as there was no evidence showing such.

(6) A supposed lost deed from Seth Swift to H. W. Suddeth, dated prior to 1846, conveying the land in controversy. Circumstances were relied on entirely to show that this deed was executed.

(7) A supposed lost deed, dated 1853, from said Suddeth to Swift, conveying the same land. Appellants relied entirely upon circumstances to show that this deed had been executed.

(8) H. W. Suddeth died intestate in 1853, leaving as his heirs five children, three of whom, viz., Nancy West, Emily Conn, and Mary Lewis, appellants claim took title to all the land in controversy by inheritance, and of whom the appellants are agreed to be all of the heirs.

The trial court rendered judgment in favor of appellee for all of the land.

The appellee claimed the land under two chains of title:

First Chain of Title.

(1) Under a deed dated March 18, 1859, from the said Nancy West, Emily Conn, and Mary Lewis, and their husbands, to Jesse Dickerson, as follows:

"The State of Texas, County of Newton.

"Know all men by these presents that we, Jefferson West and wife, Nancy West, Joseph Conn and wife, Emily Conn, and Wm. McF.

Lewis and wife Mary Ann Lewis, all of the county aforesaid, for and in consideration of the sum of three dollars paid to us by Jesse Dickerson of the county aforesaid, the receipt of which is acknowledged, do relinquish, release, quitclaim and convey unto Jesse Dickerson aforesaid all our right, title and claim of, in or to the following described tract of land situated in the county aforesaid on Big Cow creek and bounded as follows: On the north by land owned by Jefferson West aforesaid, on west by land owned by Joseph Conn, on the south by land owned by Lydia G. Swift, and on the east by Big Cow creek, and contains two hundred and fifty acres. It is a part of the headright of Lewis Donaho, and was owned by H. W. Sudduth, deceased, to whose estate we are in part heirs. To have and to hold said land with all and singular the rights and privileges appertaining to the same to the said Jesse Dickerson and his heirs or assigns forever from us or either of us and our heirs or assigns forever, but no further warranty is given.

"Witness our signatures on this 18th day of March, 1859, eighteen hundred and fifty-nine.

"[Signatures omitted.]

"The State of Texas, County of Newton.

"Before me, T. S. McFarland, chief justice of the county aforesaid, personally appeared in my presence all the signers of the within quitclaim deed, viz.: Jefferson West and wife, Nancy West, Joseph Conn and wife, Emily Conn, and W. McF. Lewis and wife, Mary Ann Lewis, all of whom are well known to me, and they signed in my presence and then acknowledged the same to be their voluntary acts; all the said women aforesaid were examined separately and apart from their husbands, and they said they were acquainted with the circumstances and transaction and did not wish to retract what was done.

"To certify the foregoing I hereto place my signature and affix the seal of the county court this 18th day of March, 1859. T. S. McFarland, Chief Justice, Newton County."

(2) Deed from Jesse Dickerson to D. R. Wingate, dated May 14, 1859.

(3) Two deeds from D. R. Wingate and other persons who were the agreed heirs of D. R. Wingate's wife, dated February 7, 1893, and February 9, 1893, to Chas. S. Saunders.

(4) Deed from Chas. G. Saunders to appellee, dated August 13, 1901.

Second Chain of Title.

(1) Agreement naming the heirs of the original patentee, Lewis Donaho.

(2) Powers of attorney from these heirs of Lewis Donaho to Seale and Powell, dated 1892.

(3) Deed from these heirs of Lewis Donaho by their attorneys in fact, Seale and Powell, to D. R. Wingate, dated December 14, 1893.

(4) Deed from Wingate to Saunders above referred to.

(5) Deed from Saunders to appellee above referred to.

The appellants contend that the three married women, Nancy West, Emily Conn, and Mary Lewis, were the common source of title, appellants claiming under them as heirs at law, appellee claiming under their deed to Jesse Dickerson, which deed to Dickerson appellants claim was so defectively acknowledged as not to pass the title.

Appellee contends:

(1) That the deed from Nancy West et al. to Jesse Dickerson on its face shows to have been properly and substantially executed and acknowledged as required by law at that time.

(2) That this court must presume in support of the judgment that the trial court found from all the facts and circumstances in the case that the married women properly and substantially acknowledged the deed as required by law, so that this conclusively presumed finding of the trial court is sufficient to sustain the validity of the conveyance, regardless of whether the officer's certificate of acknowledgment is or is not sufficient.

(3) The appellee showed a title superior and prior to the alleged title in the common source, with which superior outstanding prior title the appellee connected, and under which it had held title for more than 20 years before this suit was filed.

(4) Inasmuch as the appellee held title to the land directly from the heirs of the original patentee, and as appellants did not show conveyance into the common source, but relied on circumstances to show, first, conveyance from the original patentee to McFarland; second, proper administration proceedings in, and sale by, McFarland's estate to Seth Swift; third, a supposed conveyance from Swift to Sudduth—this court must, in support of the judgment, conclusively presume that the trial court found that appellants showed no title in the common source.

(5) That as there was evidence that Sudduth (under whom appellants claim as heirs) sold the land to Jesse Dickerson prior to 1855, since which date only Dickerson and those claiming under him have asserted any claim or paid any taxes, it must be presumed that the trial court found that such sale by Sudduth to Dickerson was a valid sale, and passed the title to Dickerson; and

(6) As the heirs of H. W. Sudduth, in their solemn petition to the probate court of Newton county, represented that their ancestor had sold the land to Jesse Dickerson; that they had received the payment for the land, and that the land had been left out of the partition of the estate at their request, the heirs of Sudduth and those claiming under him are estopped to assert any title as against Dickerson and those to whom he sold.

By their first assignment of error, the action of the lower court is called in question in admitting in evidence, over the plaintiffs' objection, the deed from Mary Ann Lewis, Nancy West, and Emily Conn, and their husbands, to Jesse Dickerson, for the reason that the said deed conveyed no title, in that it was neither privily acknowledged, nor was the said deed explained to the said married women, nor such facts shown by the certificate of acknowledgment attached to said deed.

It will, perhaps, be best, as there are only two assignments of error, and as they are closely related, that the second assignment be also considered with the above. The second assignment is as follows:

"The judgment is contrary to the law and is without evidence to support it in this, the land in controversy was the separate property of Mary Ann Lewis, Emily Conn, and Nancy West, three of the five heirs of H. W. Sudduth, and evidence fails to show any valid conveyance by the said married women to the land in controversy."

Appellants' propositions are as follows:

(a) "The land in controversy being the separate property of Mary Ann Lewis, Nancy West, and Emily Conn, at the date of the deed to Jesse Dickerson, these married women could not make a valid conveyance of such land, except that they be joined by their husbands and the notary's certificate certify the fact that it was acknowledged by such married women privily and apart from their husbands."

(b) "The certificate of the notary attached to the deed from Mary Ann Lewis, Nancy West, and Emily Conn to Jesse Dickerson failing to show that the said deed had been explained to the said married women by the notary, separate and apart from their husbands, the said deed conveyed no title."

(c) "The land in controversy was the separate property of the three of the five heirs of H. W. Sudduth, viz., Nancy West, Emily Conn, and Mary Ann Lewis, and the evidence fails to show any valid conveyance by the said women in that deed by Mary Ann Lewis et al. to Jesse Dickerson, dated in 1859, and in evidence was not certified to by the notary as required by law, in that he does not certify that the said women acknowledged the deed separate and apart from their husbands, and does not certify that the deed was fully explained to said married women by the notary as required by law."

On the contrary, it is urgently contended by the appellees:

(a) "The acknowledgment of the married women, and the notary's certificate thereof, substantially complied with the law in force in 1859, and therefore the deed is sufficient as a conveyance of the property in controversy, so that the judgment should be affirmed."

(b) "This court, in support of the judgment, must presume that the trial court found from all the facts and circumstances in the case that the married women properly and substantially acknowledged the deed as required by law, which conclusively presumed finding of the trial court is sufficient to and does sustain the conveyance, regardless of whether the officer's certificate of acknowledgment is or is not sufficient."

(c) "As the appellee showed an outstanding title superior and prior to the alleged title in the common source, with which superior prior outstanding title the appellee connected, and under which it had held for more than 20 years, the judgment which the trial court rendered in appellee's favor should be affirmed."

(d) "In the absence of findings by the trial court, it must be presumed on this appeal that from the facts and evidence the trial court found that the common source had no title, but that the title was in Lewis Donaho and his heirs, from whom the appellee holds title, so that the judgment of the trial court is not erroneous, but, being supported by facts in the record, it must be affirmed on this appeal."

(e) "In support of the judgment of the trial court, it must be held that the trial court presumed and inferred from the facts before it that the sale from H. W. Sudduth to Jesse Dickerson was valid and effective."

(f) "The judgment must be sustained by the presumed finding of the trial court that the sale of the land by H. W. Sudduth to Jesse Dicker-

son was of such character that the title passed to Dickerson."

(g) "As there was evidence in the record that H. W. Sudduth sold the land in controversy to Jesse Dickerson, the trial court was at liberty to and did presume that (1) either a sufficient written transfer was made, or (2) that the oral sale was accompanied by the payment of the consideration, the surrender of possession, and the other requisites of a valid parol sale of land."

(h) "As the evidence showed that H. W. Sudduth sold the land to Dickerson, as it showed that since that sale neither Sudduth nor his heirs asserted any claim to the land or paid any taxes thereon for 56 years when this suit was brought, and as the evidence showed that Dickerson and those claiming under him at all times since have asserted an active claim to the land, the trial court was at liberty to, and this court must presume that the trial court did, find it to be a fact that the sale by Sudduth to Dickerson was of such character as to pass the title to the land."

(i) "Where the heirs of a decedent make application for the partition of the property of the estate, acquiescing in the sale of certain land by their deceased ancestor, and obtain and take the purchase money for the land, they and those claiming under them are estopped from setting up claim to such lands."

(j) "As the evidence showed that Sudduth had sold the land to Dickerson, that in the partition of his estate, at the request of his heirs, the land was left out of the partition, and that the heirs of Sudduth had received payment for the land, such heirs and those claiming under them are estopped from now setting up claim to the property."

[1] We will examine these questions in their regular order. The Legislature, by the act approved April 30, 1846 (Acts 1st Leg. p. 156), used the following language:

"Section 1. Be it enacted by the Legislature of the state of Texas, that when a husband and his wife have signed and sealed any deed or other writing purporting to be a conveyance of any estate, or interest in any land, slave or slaves, or other effects, the separate property of the wife, or of the homestead of the family, or other property exempted by law from execution, if the wife appear before any judge of the supreme or district court, or notary public, and being privily examined by such officer, apart from her husband, shall declare that she did freely and willingly sign and seal the said writing, to be then shown and explained to her, and wishes not to retract it, and shall acknowledge the said deed or writing so again shown to her to be her act, thereupon such judge or notary shall certify such privy examination, acknowledgment and declaration, under his hand and seal, by a certificate annexed to said writing to the following effect or substance, viz.: State of Texas, County of ———. Before me, ———, Judge of, or Notary Public of, ——— county, personally appeared ——— wife of ———, parties to a certain deed or writing bearing date on the ——— day of ———, and hereto annexed, and having been examined by me privily and apart from her husband, and having the same fully explained to her she the said ——— acknowledged the same to be her act and deed, and declared that she had willingly signed, sealed and delivered the same, and that she wished not to retract it; to certify which, I hereto sign my name and affix my seal, this ——— day of ———, A. D. ———. [Seal.] But any certificate showing that the requisites of the law have been complied with shall be as valid as the form here prescribed; and such deed or conveyance, so certified, shall pass all the right, title and interest which the husband and wife, or either of them, may have in or to the property therein conveyed."

Construing this act, the courts have with unanimity agreed that the present acknowledgment law is more rigorous in its requirements, and greater care and accuracy in taking the acknowledgments of deeds are now required than formerly. A stricter rule of construction may therefore be applied to them than would be to deeds executed and recorded under a former law.

In the case of Sowers v. Peterson, 59 Tex. 220, the Supreme Court used the following language:

"The second bill of exceptions calls in question the correctness of the ruling of the court in admitting in evidence the certified copy of the deed to the land in suit from C. A. Fulton to Reuben S. Ross, dated the 18th day of March, 1873.

"The court excluded the original deed, which had been registered, because the certificate of acknowledgment was mutilated, and the concluding part of it * * * had been torn off or had been lost. Immediately afterwards he admitted in evidence the certified copy of the deed above referred to. The court, upon the production of the certified copy of the deed, which showed that the certificate of acknowledgment had been in fact complete and perfect, should thereupon have allowed the original deed to have been read in evidence as a recorded instrument, instead of allowing the copy of it to be used. As the case, however, was tried by the court without a jury, and as both the original and certified copy were before the court and are both of them here in the record, we regard this error as immaterial, and in no way prejudicial to the rights of the plaintiff in error. There was no doubt, and the record discloses the fact, that the deed was properly acknowledged and recorded.

"The action of the court in admitting in evidence the original deed to the land in suit, from George Bernard to the defendant in error and one Blaffer, dated the 1st day of July, 1873, is also assigned as error. The objection raised was that the subscribing witness, who proved up the deed for record, simply states that he signed as a witness at the request of ———; and does not disclose that it was the grantor who made the request. It is suggested that the witness may be a mere volunteer, or sign the deed at the request of a stranger.

"The objection is not well taken. It is very likely that the clerk, by mistake in writing his certificate, omitted to insert the name of the grantor as the person making the request. The name of the witness appears as one of the subscribing witnesses to the deed, and he [witness] states on oath before the clerk, on the same day on which the instrument was made, that the grantor did in fact acknowledge on that day, in his presence, that he executed the deed for the purposes and consideration therein stated. Dorn v. Best, 15 Tex. 15. In this case Judge Lipscomb says: 'If a strict compliance with the letter of the law was exacted, I have no doubt that it would destroy and invalidate thousands of records long since made and believed to have been in accordance with the law.'

"Under all the circumstances of this case, we are of opinion that the acknowledgment under the act of 1846 was sufficient, and that the court did not err in admitting the deed in evidence. It has been so held by this court in Deen v. Willis, 21 Tex. 644, 645.

"To all these deeds the registration act of May 12, 1846, is alone applicable. R. S. art. 4351. The present registration law differs materially from all former laws on the subject. It is more rigorous in its requirements, and greater

care and accuracy in taking the acknowledgments of deeds are now required than formerly. A stricter rule of construction may, therefore, properly be applied to them than would be to deeds executed and recorded under former laws."

In the case of Belcher v. Weaver, 46 Tex. 294, 26 Am. Rep. 267, Chief Justice Roberts, of the Supreme Court, uses the following language:

"The only question in the case, as stated by counsel on both sides, is, Did the district court err in admitting in evidence the deed of a married woman, to which was attached the following certificate:

" 'The State of Texas, County of Smith.

" 'Personally appeared before me, Samuel D. Gibbs, chief justice of Smith county, Woody Belcher, party to a deed bearing date November the 29th, 1858, and acknowledged that he, the said Belcher, signed the said deed, for the purposes and considerations therein set forth and expressed, and Ellen Belcher, wife of said Belcher, also a party to said deed, whose signature, with her mark to the same, being by me, said Gibbs, examined privately and apart from that of her husband, and having the said deed fully explained to her, she, the said Ellen Belcher, acknowledged that she signed the said deed without any bribe, threat, or compulsion from that of her husband, and that she does not wish to contract the same. Given under my hand and seal of the county court of Smith county, at Tyler, this the 29th day of November, 1858, Samuel D. Gibbs, Chief Justice, Smith County.'

"The form of the certificate prescribed by the statute is as follows, so far as it relates to the wife:

" 'Personally appeared ——, wife of ——, parties to a certain deed or writing, bearing date on the —— day of ——, and hereto annexed, and having been examined by me privily and apart from her husband, and having the same fully explained to her, she, the said ——, acknowledged the same to be her act and deed, and declared that she had willingly signed, sealed, and delivered the same, and that she wished not to retract it.'

"The statute provides that any certificate showing that the requisites of the law have been complied with shall be as valid as the form here prescribed. The enacting clause does not use exactly the same terms as those used in the form prescribed. It is that the wife, 'being privily examined by such officer, apart from her husband, shall declare that she did freely and willingly sign and seal the said writing, to be then shown and explained to her, and wishes not to retract it, and shall acknowledge the said deed or writing so again shown to her to be her act; thereupon such judge or notary shall certify such privy examination, acknowledgment, and declaration under his hand and seal,' etc.

"The word 'freely' may be omitted in the certificate, because it is omitted in the form. The word 'seal' may be omitted, because when this deed was made a seal was not necessary. The words 'and deed,' in connection with 'act,' may be omitted, because, though in the form, it is not in the same connection in the enacting clause. So the word 'delivered' is in one and not in the other. The form does not include that the deed was 'shown to her,' as contained in the enacting clause of the law.

"The substance of what must be stated in the certificate is nominally, at least, divided by the statute into three parts—the privy examination, the acknowledgment, and the declaration. This division, when we come to apply the law in fact, will be found more nominal than real, because the statute does not itself make a perspicuous and distinctive division in specifying the things necessary to be done.

"The certificate of the officer should show substantially that the things required by the statute had been done. This might be shown in a certificate, wherein each part is not separately presented, but even rather confusedly intermixed, if, upon a consideration of the whole certificate, it could be seen that they had been done. In other words, what is stated in the certificate is intended as a representation on paper of what was done in the discharge of this duty imposed upon the officer by the law; and although the representation may blend the parts in one, or use language, in making the representation, not technically appropriate, still, if the expressions used in making the representation, as the officer evidently meant them to be used and understood, clearly represent the several things to have been done which the law requires, it will be a sufficient certificate. The form, as given in the statute, is strikingly variant from the enacting clause in the terms used to represent what should be done, as has been shown by a comparison of the two; and if we should examine the words and expressions used in the form and in the enacting clause of the law to arrive at the meaning of the Legislature as to what they intended should be done, certainly, with equal propriety, we should examine the words and expressions of the officer, to arrive at his meaning, however inartificially expressed, in his effort to represent on paper what he had done.

"The expressions representing the privy examination are complete, excepting some bad grammar. The declaration that she signed the deed without any bribe, threat, or compulsion from her husband may be regarded as tantamount to her having signed it freely and willingly. Her freedom of action, and willingness to make the deed, has reference to, and is designed to negative any improper influence or duress by the husband. She may regret to part with her property, or she may think the price inadequate, or she may be loath to change her residence, and be unwilling to execute the deed for such purposes, in one sense, while she, from considerations controlling her will, other than any constraint from her husband, may wish earnestly, or even anxiously, to execute the deed. Is it her will, or is she made the unwilling instrument of the husband's will, to execute the deed, is the controlling question under the law. By the word 'bribe,' the officer most probably meant undue influence, improper inducement, or allurement by the husband, and, in connection with the words 'threats or compulsion,' sufficiently indicate that she acted freely and willingly, in the execution of the deed, in reference to any improper influence or constraint from her husband.

"In the case of Meriam v. Harsen, 2 Barb. Ch. Rep. [N. Y.] 232, Chancellor Walworth presented and acted on this construction of the statute of New York; and the Supreme Court of that state, in following it, say that 'if the wife executes without fear or compulsion, she manifestly does it freely, and the object of the statute is fully secured.' Dennis v. Tarpenny, 20 Barb. [N. Y. Sup. Ct. R.] 376.

"The word 'contract' used in the certificate, was evidently used by mistake, in writing it, for the word 'retract,' as used in the statute. In a case in this court where a certificate was defective, by leaving out the word 'seal,' in what should have been the expression, 'given under my hand and seal of office,' it was held that the omission was evidently accidental, and could be supplied by a construction of the whole instrument. Nichols v. Stewart, 15 Tex. 235. The mistake, in this instance, in the unintentional use of one word for another, is equally obvious, as the omission was in that case.

"The general rule upon this subject is that there must be a substantial, though not a literal, compliance with the terms of the statute, and that, although words not in the statute are used in the place of others that are, or words in the statute are omitted, yet, if the meaning of the words used is the same, or they represent the same fact, or, if the omission of a word or words is immaterial, or can be supplied by a reasonable

and fair construction of the whole instrument, the certificate will be held sufficient. * * *

"There may occasionally be found cases, in which there has been, in following this rule, a very strict construction of the words used. * * *

"It is contemplated by the enacting clause of the statute that after the deed has been fully explained to her, and she has declared that she signed it freely and willingly, she should then acknowledge the deed to be her act. This may be designed as a means of impressing upon her that she has not made it her deed, by having it signed previously, but that she is now doing that which makes it her deed, by acknowledging it to be her act.

"In this certificate, what is termed the declaration and the acknowledgment are blended together by the expression that 'she, Ellen Belcher, acknowledged that she signed the said deed, without any bribe, threat, or compulsion from her husband,' etc. If we examine the whole instrument, we will find that the officer, in taking the acknowledgment of the husband, Woody Belcher, used the expression, 'the said Belcher signed the said deed.' He used the word 'signed' instead of the word 'executed' which is used in the statute. Paschal's Dig. art. 5007. He doubtless did not know the difference in the two words, but regarded them as meaning the same thing, and therefore used the word 'signed' in the sense, as he understood it, of 'executed.' So, too, when he said that the wife acknowledged that she signed the deed and wished not to retract it, he understood himself as conveying the meaning that she acknowledged that she executed the deed. To say that a person signed a deed would be understood generally by those not versed in legal phraseology as being the same as that he executed the deed.

"In addition to this, the law itself is not entirely free from confusion, not only from the important differences in the language of the enacting clause, and the form prescribed, as has been shown, but also, in making nominal divisions in the parts of this transaction, without any well-defined designation of the parts of it consistently adhered to in the enacting clause, and in the form. For, if what is pointed out in the privy examination, and in the declaration, has been fully performed, it might be difficult to perceive that all had not been done which was necessary to include also a substantial acknowledgment of the deed as being her act.

"It follows, then, that any artificial distinctions being made for the purpose of showing that one of the nominal parts are not specifically embraced, or that one part is defectively stated, will not avail, if from the evident sense of the whole instrument, a reasonable conclusion can be arrived at, that the requisites of the law have been complied with."

In the case of Cleveland v. Smith, 156 S. W. 249, the Galveston court had before it the question of whether or not an acknowledgment of a married woman taken in 1897, which states that the married woman "having been by me first made acquainted with the contents of said instrument, acknowleged" its execution, etc. The court held that this acknowledgment was sufficient, though it did not state that the deed was fully explained to the married woman, using the following language:

"If, as stated in the certificate, these grantors were made acquainted with the contents of the instrument by the officer, the requirement of the statute was [had been fully] complied with."

In the instant case, the language as used was "they said they were acquainted with

the circumstances and transaction, and did not wish to retract what was done."

In the case of Spivy v. March, 105 Tex. 474, 151 S. W. 1038, 45 L. R. A. (N. S.) 1109, Chief Justice Brown delivered the opinion of the court, and used the following language:

"At the time the certificate was made by the officer, this statute was in force: 'Art. 1003. That when a husband and his wife have signed and sealed any deed or other writing purporting to be a conveyance of any estate or interest in any land, slave or slaves, or other effects, the separate property of the wife, or of the homestead of the family, or other property exempted by law from execution, if the wife appear before any judge of the Supreme or district court, or notary public, and, being privily examined by such officer, apart from her husband, shall declare that she did freely and willingly sign and seal the said writing, to be then shown and explained to her, and wishes not to retract it, and shall acknowledge the said deed or writing so again shown to her to be her act, thereupon such judge or notary shall certify such privy examination, acknowledgment, and declaration, under his hand and seal, by a certificate annexed to said writing to the following effect or substance, viz.: "State of Texas, County of ———. Before me, ———, judge of, or notary public of ——— County, personally appeared ———, wife of ———, parties to a certain deed or writing bearing date on the ——— day of ———, and hereto annexed, and having been examined by me privily and apart from her husband, and having the same fully explained to her, she, the said ——— acknowledged the same to be her act and deed, and declared that she had willingly signed, sealed, and delivered the same, and that she wished not to retract it; to certify which I hereunto sign my name and affix my seal, this ——— day of ———, A. D. ———." But any certificate showing that the requisites of the law have been complied with shall be as valid as the form here prescribed; and such deed or conveyance, so certified, shall pass all the right, title, and interest which the husband and wife, or either of them, may have in or to the property therein conveyed.' Paschal's Digest.

"The last clause of the statute is sufficient authority for sustaining the certificate in this case, because it appears that Mrs. Hensley declared that with her husband she signed, sealed and delivered the deed to C. A. Few, and upon her privy examination, 'she, after having the deed explained to her,' declared that she signed it 'of her own free will and accord, without fear or compulsion on the part of her husband.' She had the opportunity to retract, but, instead of doing so, she affirmed that it was her free and uninfluenced action. In addition, it is beyond dispute that Mrs. Hensley and her children lived near the land for many years, and that neither she nor her heirs ever made claim to the land."

The court, after citing the case of Belcher v. Weaver, 46 Tex. 293, 26 Am. Rep. 267, rehearses the rule as laid down by Chief Justice Roberts, and further says:

"In the case cited above, the learned judge construed the word 'contract' to mean 'retract.' 'Contract' means to enter into, while 'retract' means to withdraw from, and any but the most liberal interpretation of those words would have shown that the woman did not wish to make the conveyance. That the substance of the language of the statute will be sufficient when used in the privy acknowledgment of a married woman, is sustained by the following cases: [Citing quite a number of cases]. Many cases might be cited to the same effect, but we find no case in which it has been held that a certificate of this char-

acter, which omitted the words, 'she wished not to retract it,' was condemned, if from the language of the certificate it appears with reasonable certainty that the instrument was explained to the woman, and that she then expressed herself to be satisfied with the transaction. Each certificate must be judged by its own terms, and we believe it to be the well-settled and sound rule that any language which shows that the statute has been substantially complied with must be sustained.

"The words, 'that she did not wish to retract it,' are of no greater importance than others. Those words simply express her satisfaction with the transaction at that time, and if that state of mind should, by other words, be shown to have existed, the certificate would be valid. We here copy the certificate:

"'State of Texas, County of Rusk.

"'Personally appeared before me, the undersigned notary public, Samuel Hensley and Emily J. Hensley, his wife, both to me well known, who acknowledged that they signed, sealed and delivered the above and foregoing deed to C. A. Few [by making their marks]. And the said Emily J. Hensley, wife of Samuel Hensley, being by me examined privily and apart from her husband and after having the deed explained to her, says that she signed the same by making her mark of her own free will and accord, without fear or restraint on the part of her husband. Given under my hand and official seal, this September 8, 1857. [Signed] William M. Moss, Notary Public.'

"This certificate shows that the husband and wife together executed and acknowledged the deed, after which the wife was removed from the presence of the husband, so that she would be entirely free from his influence; the officer took the precaution to explain the deed to Mrs. Hensley, so that she could not be misled by anything said to her by her husband or other person as to the effect of the conveyance, and, thus informed and guarded by the officer, she declared 'that she signed the same of her own free will and accord.' Thus she declared that she was free from any compelling influence, and without any 'fear or restraint on the part of her husband.' The law offered to her the opportunity to retract, but in strong language she, in effect, affirms the transaction. We will suppose that Mrs. Hensley had appeared before this court, and, knowing that she could retract, had in the language of the certificate expressed herself, would not this or any other court say that she was satisfied with the transaction? It is safe to construe the language of the certificate as if the court were performing the duties of the officer; and if Mrs. Hensley, with the same warning, should use the words of this certificate, would it not reasonably appear to such court that she was satisfied? Adding to this the fact that for the remainder of her life she recognized the deed as valid, can there be a reasonable doubt on this question?

"It is not necessary for us to decide in this case whether a stranger to the title should ever be permitted to interpose this defense, but we are firmly convinced by authority and sound reasoning that, under such conditions, a court should construe the language as Mrs. Hensley and her heirs have construed it by their inaction for a half century."

In the case of Houston Oil Co. v. Sudduth, 171 S. W. 557, the court had the identical certificate in the instant case before it, and in passing upon the same, used this language:

"Nor are we prepared to hold that the court correctly held the certificate of acknowledgment to be fatally defective. It is true that the law in force at the time of the acknowledgment of the deed required the officer to certify that he explained the instrument to the married woman whose acknowledgment he took; but the statute also provides that any certificate showing that the requisites of the law have been complied with shall be as valid as the form there prescribed. Hartley's Dig. p. 131. Here the officer, instead of certifying that he fully explained the instrument, certified that 'they said they were acquainted with the circumstances and transaction.' The certificate shows that the husbands and wives together signed the deed, after which the wives were removed from the presence of their husbands, so that they would be entirely free from their influence, and then the married women were examined separately and apart from their husbands. It was upon this examination that the wives stated to the officer that they were acquainted with the 'circumstances and transaction' and that they did not wish to retract what was done. We probably could conclude, without entering too far into the realms of conjecture, that the 'circumstances and transaction' referred to were the facts connected with the sale of the land by H. W. Sudduth to Jesse Dickerson under such circumstances as to not pass the legal title, the payment of the purchase money by Dickerson, which facts were set out in the petitions filed in the probate court, and the leaving of said land out of the partition of said Sudduth's estate, because it had theretofore been sold by Sudduth to Dickerson. The petition to the probate court, signed by the married women who executed the deed in question, recites, and shows that they knew, that their father during his lifetime, had sold the land to Jesse Dickerson, and stated that they were desirous of relinquishing to said Dickerson the title thereto and that they had received payment therefor. Although the deed was executed more than half a century ago, neither the married women who executed it, nor their heirs, have since then made any claim to it, but have recognized the deed as valid. Paraphrasing the language of our Supreme Court in Spivy v. March, supra, it is safe to construe the language of the certificate as if the court were performing the duties of the officer, and if Mrs. West, Mrs. Conn, and Mrs. Lewis, upon privy examination, should use the words of this certificate, would it not reasonably appear to such court that they understood the nature of the instrument and the legal effect of their acts, and that they were satisfied?

"But we do not rest our decision upon the sufficiency of the acknowledgment, as it is not necessary, but rest it upon the view, above expressed, that the appellant is entitled, as against the appellees, to remain in undisturbed possession of a three-fifths undivided interest in the land in controversy."

We have diligently read every decision that has been offered us on this question on both sides. In the examination of the cases cited by appellants to sustain their contention, it is necessary for us to briefly refer to them.

In Parker v. Chancellor, 73 Tex. 475, 11 S. W. 503, the married women in no manner acknowledged the deeds.

In Heintz v. O'Donnell, 17 Tex. Civ. App. 21, 42 S. W. 797, nothing was said about married women's acknowledgments, the acknowledgment being of a man.

In Eckhardt v. Schlecht, 29 Tex. 129, the wife did not either sign or acknowledge the instrument.

In Cole v. Runnells, 6 Tex. 272, the deed was correctly acknowledged by the wife, but it was set aside because of fraud.

In Johnson v. Taylor, 60 Tex. 360, the acknowledgment was under the present law,

which requires a strict compliance, while the act of 1846 required only a substantial compliance.

In Norton v. Davis, 83 Tex. 32, 18 S. W. 430, the acknowledgment did not show that the deed was explained or that the wife knew anything of the transaction, the evidence affirmatively showing that she knew nothing of the effect or of the character of the instrument.

In Langton v. Marshall, 59 Tex. 296, it was held that merely understanding the wording of a deed was insufficient, which manifestly falls far short of a full acknowledgment by the married women that they were fully acquainted with all of the circumstances leading up to the transaction, as well as the nature of the transaction itself; the former is limited to the language of the deed; the latter clearly shows an understanding of the language, its operative effect, and of the matters leading up to and being a part of the conveyance itself.

In Stringfellow v. Braselton, 54 Tex. Civ. App. 1, 117 S. W. 204, the acknowledgment was taken in 1907, so that the law of 1879 (chapter 115) and not the law of 1846 controls.

In Kopke v. Votaw, 95 S. W. 15, and in Holland v. Votaw, 62 Tex. Civ. App. 91, 130 S. W. 882, the acknowledgments were the same, and merely show that the notary concluded that the women understood the deeds, it not being stated in the certificates that the married women stated that they said they understood the circumstances and transactions. These cases show the notaries' understanding, while the instant case shows the understanding of the married women, essentially different factors,

In Cross v. Everts, 28 Tex. 523, the wife neither signed nor acknowledged the instrument, so it was not binding on her, of course.

In Davis v. McCartney, 64 Tex. 584, the deed was unquestionably void, because it failed "to show that the same [it] was taken privily and apart from her husband; that she declared the instrument to be her act, and that she had willingly signed it and did not wish to retract it."

In Fitzgerald v. Turner, 43 Tex. 79, there was no acknowledgment by the wife, so, of course, she was not bound.

In Ruleman v. Pritchett, 56 Tex. 482, the acknowledgment did not show that she understood the transaction, nor that she did not wish to retract it, and the acknowledgment was properly held void.

In Blume v. White, 111 S. W. 1066, an acknowledgment perfect in form but obtained by fraud was correctly held not to be binding.

In Runge v. Sabin, 30 S. W. 568, the acknowledgment was properly held bad, because it did not state that the woman was acquainted with all of the facts and circumstances nor that the deed was explained to her.

In McKinney v. Matthews (Sup.) 6 S. W. 793, it was held that the question of the validity of the acknowledgment was not material, as the married women were estopped to deny the sufficiency of the conveyance when their deed had secured the release of their other land from incumbrance. The acknowledgment, however, did not state that the married women were acquainted with all the facts and circumstances surrounding the transaction.

The résumé above of the cases cited by the appellants in support of their contention, and the authorities cited by appellee, as we have before stated, have been diligently read, and their language carefully construed. The language used above by the Galveston court in its passing on the identical acknowledgment in the instant case, is pertinent, and after a review of the cases cited by both the appellant and appellee, and after a thorough consideration of the circumstances and the time at which these married women made the acknowledgment in question, and after taking into consideration fully the meaning of the act of 1846, and the language of the courts construing it, we are very much of the opinion that the acknowledgment should be held to be a good acknowledgment, and to carry the title.

We are not unaware, however, of the case of Veedor et al. v. Gilmer, 103 Tex. 458, 129 S. W. 595, and we concur completely in the opinion of the court which holds that the privy examination of and the acknowledgment by a married woman are absolutely essential to the passing of her title to land, and the only evidence thereof is the certificate of the officer so stating, or the judgment of a court correcting such certificate, in accordance with Revised Statutes of 1895, arts. 4663 and 4665, so as to show them. Nevertheless, while being of the opinion of the Galveston court with reference to the sufficiency of the acknowledgment and the certificate of the officer, we are not compelled to rely upon this alone to sustain the judgment of the lower court, which must, in our opinion, be affirmed.

The appellants, in their various propositions which have been above set out, raise the question that where a judgment is rendered and no findings of fact are filed, the courts of appeal are compelled to adopt and take as true any theory or state of facts which finds support in the evidence favorable to the judgment.

In the case of Reed v. Brewer, 90 Tex. 148, 37 S. W. 420, Judge Denman of our Supreme Court used the following language:

"We are not informed, however, whether or not it did so find, as there are no conclusions of fact by the trial court in the record. Under these circumstances, we must, in support of the judgment, presume that the court found every fact, fairly deducible from the evidence, as we have seen this was, necessary to its rendition. If plaintiff desired to avoid being bound

by this presumption, she should have demanded of the trial court the filing of its conclusions of fact showing whether or not it deduced such fact from the circumstances in evidence. She not having done so, the presumption that it did is conclusive, and such purpose on the part of Erastus Reed must be taken by us to be established by the evidence."

Following this, in the case of Appel v. Childress, 53 Tex. Civ. App. 609, 116 S. W. 130, it was said:

"The judge has filed no conclusions, and we are compelled to adopt and take as true any theory or state of facts which finds support in the evidence favorable to the judgment."

These cases, in our opinion, clearly lay down the correct rule, which must be applied to the determination of this cause.

Appellee's counter propositions, which are marked (a), (d), (e), (f), (g), (h), (i), and (j), all present theories upon which the court could have acted, and perhaps did, and either of them support the court's judgment in this case. For instance, it is urged, and correctly so, that the land in controversy was patented to Lewis Donaho in 1845; and appellants contend, and it is in evidence, that long before the land was patented to him Lewis Donaho conveyed it, in 1840, to William McFarland; that McFarland died; that his son qualified as administrator, and as such conveyed to Seth Swift the land, prior to 1845; that some time about 1845, Swift conveyed the land to H. W. Sudduth. The appellants did not offer in evidence any deed from Donaho to McFarland, from McFarland's administrator to Swift, nor from Swift to Sudduth, neither did appellants offer in evidence any of the instruments showing administration proceedings in the estate of William McFarland. To show the execution of all of the above deeds, and to show administration proceedings, appellants relied entirely on circumstances, which circumstances consisted of recitations in deeds executed by various parties not in the chain of title to the land in controversy, and of certain ex parte memoranda made by other persons.

The appellants refer to such matters in the record as they claim were sufficient to show by circumstances the proper execution of the deeds and administration proceedings, but the trial court was not compelled to find the circumstances sufficient to show such.

The appellee deraigned title directly from Lewis Donaho, through the following: Patent to Lewis Donaho; agreement as to the heirs of Donaho; power of attorney, Donaho heirs to Seale & Powell; deed, Donaho heirs to D. R. Wingate; deed, Wingate to Saunders; deed, Saunders to appellee.

Showing that Lewis Donaho, the original patentee, never conveyed this land, J. F. Ball testified that Lewis Donaho was the father of his wife; that he married Donaho's daughter in 1873 in Madison county; that he knew Donaho for eight or ten years before his death, Donaho dying in 1876 or 1877; that he was intimately acquainted with Lewis Donaho, and was frequently with him; that he heard Donaho speak about having land in Newton county, Donaho saying that the land was not good farming land, but that the timber some day would be worth something to his children; that Donaho stated that he got the headright of land by being in the Mexican service; that he heard Donaho speak of the land at different times; that he spoke about having land, and that it was not worth anything, but might be of benefit to his children some day. He testified that Lewis Donaho's wife survived him about four or five years, and that he had had conversation with her with reference to the land in Newton county; that she talked about having the land in Newton county, and living there, and said the land was hers; that he heard her say the land was there, and heard her make the same remark that the old gentleman did; that he understood from the statements of Lewis Donaho and his wife that in those days the land was worthless; that it was not worth anything, and there was no sale for it; that it was not much farming land, but had considerable timber on it.

Appellee's contention is that it holds title to the land from two sources, one from the heirs of Lewis Donaho themselves, and the other under the deed from Nancy West and others to Jesse Dickerson, and that, as the appellants claim as the heirs of Nancy West et al., Nancy West et al. were the common source of one of appellee's chains of title.

While the appellee does not connect with this common source of title, yet, more than 20 years before this suit was filed, it purchased another title from the heirs of Lewis Donaho, the original patentee. Therefore appellee contends that its title from the common source is superior to that of appellants, and it also contends that there is evidence in the record sufficient to sustain the findings of the trial court, to the effect that while the common source had no title, the real title had been acquired by appellee, under and by virtue of the conveyance to it from the heirs of Lewis Donaho.

There is some evidence in the record showing that Lewis Donaho never parted with the title. There is evidence also that the common source had no title. The record shows conveyances from and under the heirs of Donaho to the appellee. Therefore it is contended that, as there was evidence to show that Lewis Donaho never parted with the title, this court must presume that the trial court had so found, and that the judgment of the trial court must be upheld.

It is also contended by the appellants that the court in this case may have held that as there was evidence of a sale, whether an oral sale or a parol sale, that the court might and properly could and did presume that the sale was a valid one, and they cite us to the

case of Bringhurst v. Texas Co., 39 Tex. Civ. App. 508, 87 S. W. 897. The court in this case held that as there was evidence of a sale, whether an oral sale or a parol sale, the court might and properly did presume that the sale was a valid one, and, in arriving at this conclusion, the court said:

"It is true that article 624, Rev. St. 1895, declares, in effect, that no real estate shall be conveyed, except by an instrument in writing; but, as limited by construction, there are other means of conveyance recognized by the courts as lawful, and so enforced. The classes of contracts ·regulated by the statute of frauds are not declared by the statute to be illegal and void. It merely provides a means of successful resistance in case the statute is not complied with. It is not the compliance with the statute which constitutes the contract. The statute presupposes its legality, the enforcement of which is only suspended by the statute until its provisions are satisfied. Robb v. Railway Co., 82 Tex. 395, 18 S. W. 707; Brown on Statute of Frauds, 115a. If the contract itself is illegal or against public policy, the aid of the statute is not needed to defeat its enforcement. Warvelle on Vendors, vol. 1, § 115. The right to avail of the statute is personal, and generally a stranger to the contract cannot take advantage of the statute. Warvelle on Vendors, 156; Ry. Co. v. Settegast, 79 Tex. 256,.15 S. W. 228, and authorities cited. To be availed of at all, the point must be made either by the pleading or objection to evidence. * * *

"Recurring to the question of presumptions and inferences from facts and circumstances, it is correct to say that when they suffice to authorize the presumption of a transfer, everything is presumed to have occurred, necessary to render the transfer valid and effective. The truth is, when one is driven to rely on facts and circumstances to establish a conveyance, the court is rarely able to determine what was the exact nature of the transfer. It may have been a bond for title, with the condition discharged, but no final conveyance. It may have been a deed with title retained to secure purchase money, but no release when purchase money was paid. It might have been a parol sale, as is here claimed. The court does not enter into such details, because, if the facts suffice to authorize the inference of the highest form of conveyance, it ihcludes all lesser forms, and the details become immaterial. The philosophy of the doctrine is that the transaction will be presumed to have assumed such a form as effectively passed the title."

[2] It is argued, in line with the above, that Nancy West, Mary Lewis, and Emily Conn filed their petition in the probate court of Newton county in the administration of their father's estate, reciting: (1) During the lifetime of their father he sold the land in controversy to Jesse Dickerson; (2) that they had received payment for the land; and (3) at their request the land was left out of the partition made by the commissioners that day returned into court, and which they asked the court to approve. The court approved the partition and discharged the administrator. For more than 50 years thereafter, no one claimed the land except Dickerson and those claiming under him.

We are cited to the case of White v. Jones, 67 Tex. 638, 4 S. W. 161, in which the following language is used:

"If the heirs made application for the partition, acquiesced in the sale, and recovered the purchase money for the lots, they and those claiming under them are certainly estopped from setting up title to the lots in controversy."

Therefore it is plain that the court not having filed his conclusions of law and fact, and whose conclusions found not being of record, we are compelled to presume any conclusion which will uphold the judgment of the court, and sustain the same, and, as before said, there being testimony upon which the court might base his findings, under the decisions of the Supreme Court of our state, we are compelled, if any of the theories uphold the findings of the court, to adopt the same.

It would serve no useful purpose for us to take up in detail and pursue the propositions upon which the court could or might have reached his conclusions, and upon which this judgment would have to be sustained. Suffice it to say that, in our judgment, the action of the lower court must be sustained in finding for the appellee in this cause. The opinion herein has been already too lengthy. Believing as we do that the lower court was justified in its action, this cause is in all things affirmed.

HIGHTOWER, C. J., did not sit in this case.

KING, J. (dissenting). I agree with Associate Justice BROOKE in the affirmance of this case, but am not prepared to hold that the notary's certificate of the acknowledgment of Nancy West, Emily Conn, and Mary Ann Lewis to the quitclaim deed, on the 18th day of March, 1859, is sufficient, as I believe that, under the decisions of the Supreme Court of Texas, this certificate is fatally defective.