Delivered January 16, 1891.

---

GULF, COLORADO & SANTA FE RAILWAY COMPANY v. W. J. AND J. J. SETTEGAST.

No. 2861.

1. **Parol Contract for Sale of Land.** — The authorities seem to be agreed that the invalidity of a parol contract within the statute can not be set up by a stranger to it. The defense is personal to the person sought to be charged.

2. **Statute of Frauds.**—Letters by one party stipulating the terms of a contract offered, and letters accepting such offer, constitute a contract under the statute of frauds.

3. **Assignment of Lease — Subletting.** — When the lessee conveys his entire term in the whole or a part of the demised premises it is an assignment of the lease, but when he lets the premises for a less time than the period of his unexpired term it is an underlease.

4. **Same—Statute Construed.**—Article 3122, Revised Statutes, provides "if lands or tenements are rented by the landlord to any person or persons, such person or persons renting said lands or tenements shall not rent or lease said lands or tenements

during the term of said lease to any other person without first obtaining the consent of his landlord, his agent or attorney." Both assignments and subleasing are equally within the evil sought to be remedied by this law; and while an assignment does not come strictly within its letter it is within the spirit of the statute.

5. **Forfeiture—Waiver.**—Conceding that an assignment of the term by the lessee without the consent of the landlord would work a forfeiture, still a forfeiture would be waived by the landlord accepting rent from the assignee of the term.

6. **Same.**—The act of accepting rent operates as a waiver, although when receiving it the landlord protested against such effect, he knowing the facts when taking the rent from the assignee of the term. See facts.

7. **Landlord and Tenant.** — During the lease the landlord may bring an action for any permanent injury to the property leased, as for cutting trees and carrying away the timber.

8. **Case in Judgment.** — Settegast & Settegast leased for ten years 31½ acres of land contiguous to the city of Houston to the Texas Western Railway Company. The lessee assigned the term to the defendant. The lessor stipulated for annual rental, and among other items the lessee "was not to remove any earth which was outside of its right of way, and upon the termination of its lease *to deliver to* the lessors such portion of said premises as they may not purchase in as good condition as when received:" The defendant constructed another road upon the leased premises. Suit was brought by the landlord seeking damages for the use and occupation by defendant, etc. *Held*, that by the terms of the lease the right to build another track upon the leased land was not authorized, but inasmuch as the lessee had the right at the end of the term to replace the earth removed in the making of the road, and restore the land in as good condition as when received, the suit was prematurely brought.

9. **Charge.**—So much of the charge of the court was error which instructed the jury that the reception of the rent by the landlord was not a waiver of the forfeiture of lease, provided it was stipulated by him when he received the money that such reception of rent was not to be a consent to the transfer, but was only received as rent from the original lessee.

APPEAL from Harris.    Tried below before Hon. James Masterson. The opinion gives a sufficient statement.

*Jones & Garnett,* for appellant.—The court erred in charging the jury: "That in so far as the contract in question is a contract of lease, the person renting the land can not under the law rent or lease said lands during the term of said lease to any other person without obtaining the consent of the landlord, his agent or attorney, but whether or not any such consent has been given is a fact to be found by the jury from all the evidence before you.    But a verbal consent, if proved, is sufficient.    If from the evidence before you you are satisfied that plaintiffs or either of them consented and agreed with the Gulf, Colorado & Santa Fe Railway Company or its agent or attorney or attorneys that the said Texas Western Railway Company might transfer its rights under said contract, or if knowing thereof, if made, and after such knowledge Settegast received and accepted from the Gulf, Colorado & Santa Fe Railway Company or its attorney or attorneys the rental stipulated for, then such acceptance of rent may be regarded as consent to the transfer, unless the proof satisfy you that it was stipulated by Settegast and so stated by him when he

received the money that such reception of rent was not to be a consent to the transfer, but was only received as rent received from the Texas Western Railway Company. If you conclude that plaintiffs ever consented or assented to the transferring of the contract, then find for the defendant so far as the rents go, as the undisputed proof on that point all goes to show tender of rent by the Gulf, Colorado & Santa Fe Railway Company and refusal by plaintiffs; and as plaintiffs are seeking by their petition to vacate the contract, and this is not a suit on the contract, a transfer of a lease without the consent of the landlord does not operate as a forfeiture of the lease. To have such effect there must be such a stipulation in the lease itself. But if no consent to this transfer be shown, or if the facts do not show something equivalent, such as payment of rent under circumstances as are tantamount to consent given, as already given you in charge, then the person taking such transfer gets nothing—may be regarded as a trespasser. If under the facts in evidence you conclude that no consent or assent by the Settegasts or either of them has been shown to any transfer of the lease or contract in writing dated December 26, 1881, made between the Texas Western Railway Company and W. J. & J. J. Settegast, then find for the plaintiffs for the land in possession of the Gulf, Colorado & Santa Fe Railway Company and for all damages done to plaintiffs' land by said last named railroad company. On the other hand, if you conclude from the evidence before you that the Settegasts or either of them consented to a transfer of the contract of 26th of December, 1881 (if any such transfer has been shown), then your verdict should be for defendant."

This charge was and is erroneous and prejudiced the rights of this defendant before the jury, and is objected to because it does not state the law, and because it charges the jury to find for the plaintiffs if the jury believed from the evidence that plaintiffs never consented to the transfer of said lease and contract by the Texas Western Railway to this defendant.

Said contract not only leased the land to the Texas Western Railway Company, but in substance and effect was a bond for title from the Settegasts to the Texas Western Railway Company for forty lots of ground, each lot to be 50 by 100 feet, and aggregating in all 200,000 square feet of the land embraced in the lease, and of which the Texas Western Railway Company was entitled to the possession until plaintiffs made it a title for them.

And the undisputed evidence shows that the Texas Western Railway Company transferred all its rights under said contract, except its right of way, to this defendant, and this defendant took possession of the land and is holding it under that transfer, with an agreement that it is to comply with all the requirements of said contract on the Texas Western Railway Company.

The pleadings of this defendant and the undisputed evidence show that all the land occupied by this defendant's right of way over the land em-

braced in the lease and all the land embraced in the excavations and embankments on said land made by this defendant does not amount in area to 150,000 square feet, which is greatly less than the area of said forty lots.

This defendant in its answer in the case designates the land occupied by its right of way and by said excavations and embankments as a part of the said forty lots which it is entitled to and bound to buy from plaintiffs under said contract at the price named in said contract, and expresses this defendant's willingness and readiness to take and pay for said land according to the terms of said contract.

Under these facts it was error in the court to charge the jury to find against this defendant as to the land occupied by its road and cuts and embankments, even if the Settegasts never consented to the transfer by the Texas Western Railway Company to this defendant. And it was error in the court not to inform the jury in the charge that as to this land the verdict should be for this defendant.

*Stewart & Stewart* and *Geo. H. Breaker,* for appellees.— 1. The assent of the Settegasts, the landlords, to the so-called transfer by their lessee, the Texas Western Railway Company, to the Gulf, Colorado and Santa Fe Railway Company of the lease between the Settegasts and the Texas Western Railway Company was by the law of this State necessary to the validity of said transfer. Rev. Stats., art. 3122.

2. The contract or agreement between the two railroad companies constituted a leasing or renting by the tenant to another person within the meaning of article 3122 of the Revised Statutes, that statute being clearly intended to prevent any substitution or change of tenants without the consent of the landlord. Tayl. Land. and Ten., sec. 16.

3. There was no evidence to show by whom the letters claimed by appellant to evidence the contract between the companies were signed, or that they were signed by the properly authorized officers of the respective companies, or that the whole of the contract was contained in letters signed by each company. The evidence, therefore, did not disclose a valid contract under the statute of frauds.

4. The fact that in the pleadings the Gulf, Colorado and Santa Fe Railway Company alleged the contract between the companies, and the other company admitted it, did not take it out of the statute of frauds, for the reason that the uncontradicted evidence showed that it was made subject to ratification of the Settegasts, and they were therefore necessary parties to the contract.

GAINES, ASSOCIATE JUSTICE.—This action was brought by appellees to cancel an assignment of a lease which had been made by them to the Texas Western Railway Company, and which had been assigned by the latter to the Gulf, Colorado & Santa Fe Railway Company, and to recover

damages. Both companies were made parties defendant. There was a verdict against the appellant for $8000 in favor of appellees, and against the latter in favor of the Texas Western Railway Company. Judgment was rendered in accordance with the verdict.

On the 26th day of December, 1881, the plaintiffs below leased to the Texas Western Railway Company 31½ acres of land lying contiguous to the city of Houston, for the term of ten years. In consideration of the stipulations in its favor that company obligated itself to pay to the lessors an annual rent of $300, the first year's rent to be paid the 1st day of January, 1883, and that of each succeeding year to be paid on the 1st day of January next thereafter ensuing. It was also stipulated that at the end of the term the railroad company should pay the lessors for the land included in the right of way at the rate of two and one-half cents per square foot, and at the same time the lessors were also to convey to the company forty lots of fixed dimensions at a stipulated price, to be paid upon a tender of a deed. The company also had the privilege of buying other lots, at a price to be determined by appraisement. The company bound itself to pay for any timber taken from the land except such as was found upon its right of way, not to remove any earth which was outside of its right of way, and upon the termination of its lease "to deliver to" the lessors "such portion of said premises as they may not purchase in as good condition as when received." The Texas Western Railway Company entered under the contract.

In May, 1883, the Texas Western Railway agreed to convey "all its right, title, and interest in and under its contract and lease made with W. J. & J. J. Settegast" to the Gulf, Colorado & Santa Fe Railway Company, the latter agreeing "to pay the yearly rental therein specified" until the termination of the lease, and at that time to pay for the former company's right of way.

On the 7th day of January, 1884, the attorneys of the Gulf, Colorado & Santa Fe Railway Company tendered to W. J. Settegast a draft of which the following is a copy:

"$300.                    HOUSTON, TEXAS, January 7, 1883.

"At sight pay to the order of W. J. Settegast & Bro. the sum of three hundred dollars, the same being for one year's rent from January 1, 1883, to January 1, 1884, of land leased from them by the Texas Western Railway Company and upon which land the Gulf, Colorado & Santa Fe Railway Company have built their road.

[Signed]                         "JONES & GARNETT,
                    "Attorneys for G. C. & S. F. Ry. Co.

"To Walter Gresham, Galveston, Texas."

It was admitted that the date 1883 in the draft was a mistake for 1884. The draft was accepted by W. J. Settegast and was paid. Gresham was at the time the appellant's agent. W. J. Settegast testified as follows:

" The draft (by which he received the rent for 1883) was paid to me by Mr. Garnett; my understanding was that he paid it for the Texas Western Railway; I objected to receiving it because it was not written exactly as I wanted it; Mr. Garnett assured me it would not impair any of my rights against the Santa Fe Railway; I never did claim that the Santa Fe was my tenant; when Mr. Garnett presented the draft to me he just told me he wanted to pay that rent; I told him I did not like the way the draft was drawn, I was afraid it might impair my rights against the Texas Western Railway; he told me it did not impair my rights; I objected to the draft because I was afraid it might impair my rights against the Texas Western Railway; that I did not recognize the Santa Fe Railway; I did not know when I received the money that the Gulf, Colorado & Santa Fe was paying it; Mr. Garnett did not tell me when he tendered me the draft that it was the rent of the land that the Gulf, Colorado & Santa Fe Railway proposed to pay; I told him that I did not recognize the Santa Fe."

Counsel for appellees, as a reason why appellant should not claim any rights under the assignment of the lease, insist that the contract between the companies is not operative because it was not in writing and signed by the party to be charged, as required by the statute of frauds. But the authorities seem to be agreed that the invalidity of a parol contract within the statute can not be set up by a stranger to it. The defense is personal to the party sought to be charged. League v. Davis, 53 Texas, 14; Lee v. Wilmerding, 57 Texas, 444; Lavander v. Hall, 60 Ala., 214; Norton v. Simonds, 124 Mass., 19; Cowan v. Adams, 10 Me., 382; Ryan v. Tomlinson, 39 Cal., 644; Babinean v. Cormier, 1 Mart. (La.), N. S., 459; Cunningham v. Patton, 6 Pa. St., 357; Chicago Dock v. Kinzie, 49 Ill., 289; Bohannon v. Pace, 6 Dana, 194; Sneed v. Bradley, 4 Sneed, 301; Records v. Cunningham, 4 Neb., 301; Anderson v. Simpson, 21 Ia., 404; Clary v. Marshall, 5 B. Mon., 269.

But in this case there was a distinct proposition by the Santa Fe Company by letter to the Texas Western Company showing all the terms of the contract, and there was evidence to show that the latter company accepted also by letter. This answered every requisite of the statute. Watson v. Baker, 71 Texas, 739; Reed on Stat. of Frauds, sec. 341, *et seq*.

Besides, the Santa Fe Company having gone into possession and having made improvements (valuable at least to itself) and having paid a year's rent, there was such a part performance as would enable it to enforce a specific performance of the contract as against the Texas Western Company.

Proceeding with the questions in their logical order, the next we shall consider is presented by counsel for appellant. They submit that the contract between the two railway companies was an assignment, and that as such it was not prohibited by our statute. In so far as they claim that

the contract was an assignment, this ground is well taken. When the lessee conveys his entire term in the whole or a part of the demised premises, it is an assignment of the lease; but when he lets the premises for a less time than the period of his unexpired term, it is an underlease. But we do not concur in the proposition that the statute does not apply to an assignment. It reads as follows: "If lands or tenements are rented by the landlord to any person or persons, such person or persons renting said lands or tenements shall not rent or lease said lands or tenements during the term of said lease to any other person without first obtaining the consent of the landlord, his agent or attorney." Rev. Stats., art. 3122. The language employed in this article leads us to the conclusion that the person who framed it did not have in mind the technical distinction between an assignment and an underlease, and that it was not the intention to prohibit the one and to allow the other. Both are equally within the evil which was sought to be remedied; and while an assignment does not come strictly within the letter it is within the spirit of the statute.

What the remedy of the landlord may be when the tenant has assigned or sublet without his consent the statute does not indicate. The appellees seem to have proceeded, in part at least, upon the theory that the lease was forfeited, and this construction of the statute is the most favorable for them. It is hardly necessary to determine the question, for in so far as this case is concerned that construction may be conceded to be correct. A forfeiture may be waived, and in our opinion, if there was a forfeiture of the lease by reason of the assignment or of the construction by the Santa Fe Company of its road over the demised premises, it has been waived by the receipt by the lessors of the rent which was paid in January, 1884. It is well settled that an act of forfeiture is waived by receiving rent which afterwards accrues, provided the landlord have notice of the act of forfeiture at the time of the payment. It will not do for appellees to say that they declined to receive the payment for fear that they would thereby waive their rights against their lessors, and that they were told by the party making the tender that their rights would not be waived. It is a case in which actions are more effective than words.

Under a similar state of facts it was held by the English Court of Queen's Bench in the case of Croft v. Lumley, 5 Ellis & Blackburn, 648, that the acceptance of money tendered as rent, though under protest that it would not be received as such, was a waiver of a previous act of forfeiture. In the House of Lords in the same case six of the seven judges who gave advisory opinions concurred in that ruling. Croft v. Lumley, 6 H. of L., 672. The assignment of the lease was made in May, 1883, and very soon thereafter the appellant entered and constructed its road. The draft expresses that it was for the rent for the year 1883, a portion of which time was subsequent to the alleged act of forfeiture. It shows upon its face that the appellant was then in possession of the property, and it is drawn

by the appellant's attorneys upon its agent. That the transaction was simply a receipt of rent under the lease which had accrued in part after the forfeiture, and which was paid by the Santa Fe Company out of its own funds, does not admit of successful controversy. The very face of the draft apprised the Settegasts of the facts and that the appellant was paying the rent. Having accepted money from the appellant which was due only in case the contract continued in force after the assignment, they are estopped to deny the continued existence of the lease and to say that they did not know the appellant in the transaction.

If the lease was not forfeited, then it becomes an important inquiry whether or not this suit can be maintained at this time except for the damages for cutting and carrying away the timber; and we are of opinion that it can not. The rule is well settled that the landlord may sue for and recover for damages to his reversionary interest. That is, he may bring an action for any permanent injury to the property. As we construe the contract, the appellant, admitting it to be the lawful assignee of the lease, did not have the right to construct its road across the demised land. There is a stipulation in the lease against the lessee removing any dirt from the land; whether this meant to prohibit excavations and embankments such as are ordinarily made in the construction of a railroad, other than such as the lessee should make upon its own right of way, is not quite clear to us. But at all events the entire tenor of the contract leads us to the conclusion that the construction of another railroad across the land was not contemplated by the parties. It was evidently intended, we think, that the land which was not occupied by the Texas Western Company's right of way should ultimately be laid off into blocks and lots and sold to persons for the ordinary purposes for which such suburban property is commonly used.

But the lease contained the further stipulation that at the expiration of the term the lessee should deliver to the lessors "such portion of said premises as they may not purchase in as good condition as when received," from which it seems that the parties contemplated that the earth might be disturbed by the lessee, and that in order to avoid the payment of damages therefor the lessee should have the privilege of restoring the land to its former condition. It was not a lease of buildings but merely of land, and the stipulation must mean this, else it can have no effect. The provision is reasonable and just. Since, therefore, the construction of appellant's road can not operate to the appellees' injury during the lease, and since it has the right to restore the land to its former condition at the end of the term, it follows that this suit, in so far as damages for that construction is concerned, was prematurely brought. It being possible to restore the earth which was displaced in constructing the railroad track, we can not assume that this will not be done.

If it should be held that the law does not make an assignment of the

lease an act of forfeiture, then we should still hold that the suit is prematurely brought for the damages resulting from the construction of the appellant's road. It is a damage for which the lessee is responsible and which it would have the right to repair at the end of the lease by restoring the land to its original condition.

It follows that so much of the charge complained of in the first assignment of error as instructed the jury that the reception of the rent by Settegast was not a waiver provided "it was stipulated by Settegast and so stated by him when he received the money that such acceptance of rent was not to be a consent to the transfer, but was only received as rent from the Texas Western Company," was erroneous.

Whether the appellant upon the termination of the lease, without restoring the land to its original condition, would have the right to select lots covering its right of way, so as to escape the payment of damages caused by the construction of its road, is a question which may arise in another suit, but which will not arise in this suit unless upon another trial the testimony should be materially different. Therefore we deem it unnecessary to consider it.

There are many other assignments, but our opinion upon the questions presented by them, in so far as such questions are likely to arise upon another trial, is sufficiently indicated by what has already been said.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

Delivered January 16, 1891.