GOFFINET et al. v. BROOME & BALDWIN. (No. 1450.)

(Court of Civil Appeals of Texas. Amarillo. Jan. 22, 1919.)

1. LANDLORD AND TENANT ⊜⇒231(2)—ACTION FOR RENT — ASSIGNMENT OF LEASE — CONSENT—EVIDENCE.

In lessee's action against sublessee on express covenant to pay rent, defended on ground that sublessee's assignee had been accepted by owner as tenant and by lessee as their lessee, the check from sublessee's assignee to owner for rent installment was admissible in evidence to show lessor's acquiescence in assignee's lease and acceptance of assignee as tenant.

2. LANDLORD AND TENANT ⊜⇒231(2)—ACTION FOR RENT—EVIDENCE.

In action for rent to November 1, 1915, evidence, as to intention of owner as to use of property in November, 1916, was inadmissible.

3. LANDLORD AND TENANT ⊜⇒231(6)—RENT—ASSIGNMENT OF LEASE — SUFFICIENCY OF EVIDENCE—ACCEPTANCE OF ASSIGNEE.

In lessee's action against sublessee on express covenant to pay rent, where defense was that owner and lessee had accepted sublessee's assignee as lessee, evidence *held* sufficient to show such acceptance.

4. LANDLORD AND TENANT ⊜⇒208(1) — ASSIGNMENT OF LEASE — LIABILITY OF ASSIGNOR.

Assignment of lease by lessee does not affect his liability on an express covenant to pay rent.

5. LANDLORD AND TENANT ⊜⇒193 — RENT — CANCELLATION OF LEASE — VACATION OF PREMISES.

Where tenant was entitled to nine months' notice of cancellation of lease, but in being notified of such cancellation was given right to immediate cancellation of lease and surrender of land, the tenant's vacation of land, without notifying owner or sublessee, from whom he had purchased lease, of his acceptance of owner's proposition to immediately end contract, was not sufficient to relieve tenant or sublessee of liability for rent.

6. APPEAL AND ERROR ⊜⇒1056(1)—REVIEW—HARMLESS ERROR.

In lessee's action against sublessee on express covenant to pay rent, where defense was that owner and lessee had accepted sublessee's assignee as lessee of land, exclusion from evidence of check from assignee to owner for rent installment *held* not alone sufficient to warrant reversal of judgment for plaintiff.

7. CONTINUANCE ⊜⇒26(11)—ABSENT WITNESS—DILIGENCE.

Where no effort had been made to take deposition of absent witness, a resident of another

county, no such diligence had been exercised to procure the evidence of such witness as to justify postponement.

Appeal from 'Hall County Court; S. G. Alexander, Judge.

Action by Broome & Baldwin against F. J. Goffinet and another. Judgment for plaintiffs, and defendants appeal. Affirmed.

T. T. Clark, of Memphis, for appellants.
Elliott & Moss, of Memphis, for appellees.

HALL, J. This is an action by appellees, upon a written contract, executed by appellants, wherein appellants agreed to pay appellees the sum of $630 in cash, at Memphis, Tex., semiannually, as rents upon certain lands described in the contract, the first payment to be made May 1, 1914, and the second November 1, 1914, and semiannually thereafter on said dates until the expiration of the lease. The land in question had been leased by appellees from one Joe J. Mickle, with authority to assign the lease. One paragraph of the lease is as follows:

"It is understood and agreed that should the party of the first part sell during the term of this lease contract the above-described premises, and should desire to terminate this lease contract and repossess said property for those to whom he had sold, then he shall give to the party of the second part written notice of such sale, and his desire to terminate this lease contract and under these conditions the party of the second part hereby agrees to terminate this lease contract on the first day of January following the above-described request and surrender possession of said property, providing this gives nine months' notice for possession. However, in such case party of the second part shall have not less than nine months to surrender possession though it may be necessary to run over the first day of January following said notice and in such event the rent on the aforesaid property shall be paid only to the time of the expiration of said notice and surrender of said property."

The contract between appellants and appellees seems to be identical in its terms with the lease obtained from Mickle, the owner of the land, by appellees; and while, of course, appellees had no right to sell the land, appellants have acquiesced in the right of Mickle to sell and dispossess them in the event notice was given, as provided in the above-quoted paragraph of the contract. About July 16, 1915, Mickle addressed a notice to appellees, demanding possession under his contract, but no such notice was ever given to appellants. The letter notifying appellees was not a positive demand for possession. The latter states that the lands have been sold, and that the lease will terminate after nine months from its date, and proceeds:

"If, however, you prefer to cancel the lease contract at this time the rents will stop now.

I will accept of said cancellation but if you require the lease can continue from nine months from this date as provided in the contract. You will kindly advise me promptly if you desire the lease to be canceled at this time or prefer waiting the expiration of the nine months, which would be April 15, 1916."

It appears that, after the sublease of the land to appellants by appellees, appellants paid one semiannual installment of the rent on May 4, 1914, and the second installment on November 3, 1914. On March 25, 1915, by written transfer, appellants assigned their lease to one J. D. Lard, who paid the first semiannual installment of rent on the contract, which entitled him to possession until November 1, 1914, but that the installment due on said last-named date was never paid, and this is the installment which is sought to be recovered in this action. Appellants answered, denying that they owed appellees any rent whatever, but that they had paid all sums due by them under the terms of the contract, while the leased premises were in their possession; that they had duly assigned the lease to one J. D. Lard, March 25, 1915, and had reserved no reversionary interest or rights in the premises; that the said Lard, the assignee, had paid the semiannual installment of rent due May 1, 1915; that said assignment was transferred with the knowledge and consent of appellees, whereby appellants were released from any liability for rents; that Joe J. Mickle, the owner of the land, had accepted J. D. Lard as a tenant; that appellees had recognized and accepted Lard as their lessee, and notified Lard under the terms of the contract of the exercise of the option to sell the premises, but had given Lard the option of retaining the premises until April 15, 1916, or of vacating at once. That appellants were never notified that appellees or Mickle had exercised the option to sell and had demanded possession; that Lard had vacated the premises prior to the first day of November, 1915, the time to which his semiannual payment of rent entitled him to possession under the contract, and that, by reason of his having been notified that he might vacate at once, he had immediately vacated and paid the rent due up to the time he delivered possession. Lard was not made a party to the suit, nor did he testify. The verdict of the jury is in favor of appellees "in the sum of $630.00, less $52.50, with interest from November 1, 1915, to date."

[1] Appellants first assign as error the action of the court in refusing to admit in evidence the check for $630, dated May 10, 1915, with which Lard paid appellees the first semiannual installment of rent. This check should have been admitted as tending to show that appellees had acquiesced in the assignment of the lease and accepted Lard as the tenant.

[2] The second assignment is based upon

the court's action in refusing to permit Joe J. Mickle to answer the following question:

"Did you buy and ship a number of cattle from South Texas to Miami, Tex., in November, 1916, to put on the leased land now in controversy?"

There was no error in this ruling. Lard had abandoned the land prior to November, 1915, and the matter in controversy was the collection of rent alleged to have been due and payable November 1, 1915. Any intentions entertained by Mickle with reference to the use of the property in November, 1916, are wholly foreign to the controversy.

[3] The third, fifth, sixth, and ninth assignments will be considered together. The question is whether appellants, as sublessees of appellees, Broome & Baldwin, bound by an express covenant to pay them rents, are liable for rents accruing after they had assigned the lease to Lard, with the knowledge of appellees. We find in the statement of facts a letter from Joe J. Mickle to Lard, dated July 20, 1915, as follows:

"We served notice on Messrs. Baldwin & Broome of the cancellation of the lease contract on the Roberts county ranch, which you occupied and stated to them that if they desired the contract could be canceled so as to expire at once, or any time this month; or if preferable, to terminate nine months from the date notice was given, which would make it mature April 15, 1916. I have just had a talk with Mr. Baldwin and he states that he neglected to say to you that the cancellation could take effect at this time if you so desire and I write to know if it would suit you to cancel the contract during this month or if you prefer to hold it until April 15, 1916."

Under the decision of the Supreme Court, in the case of G., C. & S. F. Ry. Co. v. Settegast et al., 79 Tex. 256, 15 S. W. 228, we think the evidence is sufficient to show that both Mickle and appellees had accepted Lard as the lessee of the land. In fact, we fail to find in the record any direct or positive evidence to the contrary. So the question then under these assignments, differently stated, is, Did the acceptance of rents from Lard and the recognition of Lard as the assignee of the lease from appellants, as a matter of law, release appellants from all liability upon their express covenant to pay rents? In Ascarete v. Pfaff, 34 Tex. Civ. App. 375, 78 S. W. 974, Judge Fly says:

"The rule is that when a lessee, with the consent of the landlord, assigns the lease for the term, the assignee becomes charged with the rent, and the original lessee is no longer liable for the rent unless it be specially agreed otherwise."

The first case cited in support of the holding is Loustaunau v. Lambert, 1 Tex. Civ. App. 434, 20 S. W. 937. The opinion in the Loustaunau Case was written by Judge Collard, who was then a member of the Third Court of Civil Appeals, and in which it is said:

"When Wilson became the owner of the lease, he assumed the obligations of the original lessee, as he was bound by law so to do; and upon the transfer of the lease to Moke, he in turn became so bound; and any fact tending to show that the landlord recognized such substitution was legitimate. Their acceptance of either of them as lessee, or as the party to whom they should look for payment of rent, such party being bound so to do in law or by contract, amounted to a waiver of lien upon the goods of the original tenant."

The suit was instituted by Mary Lambert and others, creditors of Richard Lambert, against Loustaunau & Co., to enjoin Loustaunau & Co. from executing a judgment by the said Loustaunau & Co. against Richard Lambert, in the sum of $2,625, and to restrain them from receiving and collecting from the clerk of the court said sum, which had been realized from the sale of the stock of goods belonging to Richard S. Lambert, and levied upon by Loustaunau & Co. under a distress warrant for rents due and to become due to them from Richard S. Lambert. It appears that Lambert became insolvent and had absconded, and that Wilson became the owner of the leasehold estate, and that with the consent of Loustaunau & Co. Wilson had leased the premises to Moke for the unexpired term. It further appears that Loustaunau had received rents from Moke for one month. It further appears that Mrs. Lambert, together with other creditors of the absconded debtor, Richard S. Lambert, recovered judgment and foreclosed their attachment liens upon the goods levied upon. The plaintiffs asked the court to charge the jury:

"That if they find from the evidence that subsequent to the lease by Loustaunau & Co. the said lease was assigned and transferred to one Ben Moke, by and with the consent of said Loustaunau, or by them, and that said lease is for the whole of the unexpired term of the Lambert lease, or any part thereof, provided that you find that said Ben Moke was accepted by Loustaunau in lieu of Richard S. Lambert's lease, then you will find for the plaintiffs."

This charge was given, and is made the basis of the fifth assignment of error. In discussing the action of the court, Judge Collard said:

"The expression, 'or any part thereof,' should possibly not have been used in the charge, because the undisputed evidence shows that the entire unexpired term was assigned to Moke, which, as we have before seen, rendered him liable for the performance of all the undertakings of the original lessee, for rent past due and unpaid as well as that to become due, the acceptance of such obligations by the landlord in legal effect being an acquittance of Lambert and a release of the rental lien upon the goods on the rented premises."

This holding seems to sustain the rule announced by Judge Fly in the Ascarete Case. The next case cited by Judge Fly as sustaining the rule is Giddings v. Felker, 70 Tex. 176, 7 S. W. 694. That was a suit by Giddings against Hardin and Felker to recover rent for land leased to Hardin, and subsequently subleased by Hardin to Felker, without the consent of Giddings. The trial court found that Felker did not absolutely agree to pay the rent that Hardin had contracted to pay plaintiffs, unless he should realize from the crops to be raised on the place a sufficient sum to enable him to do so. The Supreme Court, speaking through Judge Maltbie, said:

"The question for determination is whether, under the facts of this case as found by the court, judgment should have been rendered against Felker for the sum that Hardin had agreed to pay. According to the findings Felker is subtenant and not liable to appellants for rents unless by virtue of his undertaking with Hardin. Wood on Landlord and Tenant, 545, 547; Harvey v. McGee, 44 Tex. 412. But if Hardin had assigned his term, Felker then would have been liable upon all the terms of the lease."

In that case the court makes no comment whatever, nor announces any rule as to the liability of Hardin, except to affirm the judgment. The case was tried by the court, resulting in a judgment against Hardin for the full amount of the rent agreed to be paid by him. It is not, on our opinion, authority for the rule announced by Judge Fly in the Ascarete Case. The third case cited by Judge Fly is Le Gierse v. Green, 61 Tex. 128. The facts of that case necessary to be considered are that Le Gierse & Co. became the assignee of a lease entered into between Green, as landlord, and Bean Bros. & Hursch, as tenants, and Judge Stayton held that as such assignees they became liable to pay the rents in accordance with the agreement made between the landlord and the original lessees. Green had sued Le Gierse & Co., G. W. Bird & Co., and Focke & Wilkins, to recover the rents due under the Bear Bros. & Hirsch contract, alleging that all of the defendants had become purchasers of the leasehold interest of Bear Bros. & Hirsch. Le Gierse & Co. contended that they had leased the property by independent agreement from Bear Bros., under which they were authorized to collect the rents and apply the proceeds to the satisfaction of debts due them as the cerditors of Bear Bros. & Hirsch. The suit resulted in favor of plaintiffs against the defendants, and judgment was rendered in the sum of $3,000. Under the rule announced by Judge Fly, Bear Bros. & Hirsch would have been released, but Judge Stayton said:

"The effort of Green to collect from Bear Bros. & Hirsch was but the exercise of a legal right; for they were bound to him by their contract, and its exercise could in no way have misled or prejudiced the appellants, but would have been to their benefit if successful."

Our investigation has convinced us that the weight of authority in other jurisdictions is against the rule announced by Judge Fly, and this is why we are discussing the authorities cited by him to sustain his holding. The rule announced in the Ascarete Case is followed in Kennedy v. Groves et al., 50 Tex. Civ. App. 266, 110 S. W. 136, in which Judge McMeans says:

"There is no doubt that the acceptance of Groves by Wilson as lessee under Kennedy would, in the absence of evidence showing a contrary intention, operate as a relinquishment of his landlord's lien upon the property of Kennedy remaining on the rented premises."

In Demetri v. McCoy, 145 S. W. 293, Chief Judge Pleasants says the evidence shows that McCoy leased the premises to appellant, and that appellant sold out his business to Lawrence, who paid rents to appellee's agent for several months, beginning with February, 1908; that when the February rent became due plaintiff sent a receipt for the rent to his agent Bickford, who presented it to Lawrence; that Lawrence refused to pay the rent unless the receipt was made out in his name. Upon being notified of this fact plaintiff inserted Lawrence's name in the receipt in lieu of the defendant's and that receipts for rent for the months of March and April were made to Lawrence, as the rents were paid by him. McCoy testified that he never consented to accept Lawrence as his lessee and release appellant Demetri from his contract; that when he was notified that Lawrence wanted the receipt made out in his name he supposed Lawrence had become a partner in the business. Chief Judge Pleasants says that:

"The evidence set out is sufficient to sustain the finding of the trial court that appellee did not agree to release the appellant from his contract and accept Lawrence as his lessee. Appellee swears that he made no such agreement, and he is corroborated by Lawrence, who swears that he did not assume the obligations of the contract. If Lawrence was insisting on the right to hold the property as sublessee and offering to pay the rents, it may be that under the rule announced in the cases of Ascarete v. Pfaff, 34 Tex. Civ. App. 375, 78 S. W. 974, and Railway Co. v. Settegast, 79 Tex. 256, 15 S. W. 228, appellee, having accepted rents from him for several months, would not be permitted to deny him the right to hold the property for the term of the lease. But no such question is presented in this case. The acceptance of rent from Lawrence for several months would not of itself release the appellant for the balance of the term; nor is it conclusive evidence of the fact that appellee agreed to release the appellant. The question is one of fact."

[4] That an assignment by the lessee does not affect his subsequent liability upon the express covenants contained in his lease is sustained by such an overwhelming weight of authority in other jurisdictions that we feel constrained to dissent.from the holding of Judge Fly in the Ascarete Case, and we incline to the opinion that the language quoted from the Le Gierse Case shows that Judge Stayton also entertained the contrary view. We will not unnecessarily .prolong the opinion by quoting at length from the authorities which we think justify us in our holding, but refer to 1 Tiff. L. & T. § 157 (2), p. 962; 2 Underhill on L. & T. § 650, p. 1092; 24 Cyc. pp. 1177, 1178; 16 R. C. L. §§ 343, 345, 347; Kanawha-Gauley Coal & Coke Co. v. Sharp, 52 L. R. A. (N. S.) 968, note. Appellants insist that the court erred in not giving their special instruction No. 1. This instruction is appellants' construction of that term of the contract which permitted the lessors to terminate the lease by giving nine months' previous notice, and the instruction is in part as follows:

"I charge you that if you find and believe from the evidence that before the 1st day of November, 1915, the owners of the land notified the defendants and the said J. D. Lard,'who had possession of same, that they had sold said land and had decided to terminate the lease, and that after receiving said notice the said J. D. Lard did vacate and surrender said land in question, then you are instructed that no further sums are due under said contract, and you will find for the defendants, and so say by your verdict."

[5, 6] Mickle had requested Lard to notify him promptly if he desired to cancel the lease at the time of the notice. Under the terms of this letter it became necessary for Lard to signify his acceptance of Mickle's proposition to end the contract at once by communicating such acceptance to Mickle or to appellees, Broome & Baldwin. It is true that Goffinet testified that Lard vacated the land prior to the month of November, but merely moving off the premises, without conveying to Mickle his acceptance of the proposition, would not be sufficient to relieve Lard and Goffinet of their liability. Appellants' exception No. 8, attacking the charge of the court, is overruled. We think the court correctly construed the contract in the paragraph designated. The error urged under the first assignment is not alone sufficient to warrant us in reversing the judgment.

[7] The seventh assignment is based upon the court's action in refusing to postpone the trial until the arrival of Lard. Lard had not been made a party to the suit. No effort, it seems, had been made to take his deposition, and we infer from the record that he was a resident of Roberts county. Under such circumstances no diligence was shown entitling appellant to a postponement.

Finding no reversible error, the judgment is affirmed.