**STANOLIND OIL & GAS CO. v.
GUERTZGEN et al.**
No. 8814.

Circuit Court of Appeals, Ninth Circuit.
Dec. 8, 1938.

WILBUR, Circuit Judge, dissenting.

Louis P. Donovan, of Shelby, Mont., for appellant.

S. C. Ford, of Helena, Mont., for appellees.

Before WILBUR, HANEY, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

Appellant, assignee of an oil and gas lease, brought suit to enjoin appellee, Emil Guertzgen, one of the lessors, from interfering with its operations under the lease. Guertzgen, by cross-complaint, asked that the lease be declared forfeited upon the ground, among others, that it contained a provision against assignment and that the provision had been breached. A claim for damages, later abandoned, was also made because of appellant's refusal to discharge the lease on the records. The case was tried to the court and a decree entered canceling the lease and awarding costs and attorneys' fees.[1]

1. Appellant first contends that the unauthorized assignment of the lease did not cause it to become forfeited or terminated.

The lease was executed on January 24, 1929 between appellee Guertzgen and his wife, as lessors, and the Mid-Northern Oil Company as lessee. In the main body of the contract as originally drafted the lessee was given the right to assign the lease in whole or in part. At the time of the execution, however, appellees refused to sign unless the contract were changed so as to prohibit assignment except with lessors' consent. Accordingly, a rider or addendum, prepared by the lessee, was executed by both parties and attached to the instrument, as follows: "It is understood that the Mid-Northern Oil Company will not assign the above-mentioned lease in whole or in part, * * * without the consent of the lessor."

On October 26, 1932, subsequent to the completion of a productive gas well, the Mid-Northern Oil Company assigned to the Midwest Refining Company, and on November 1, following, the latter assigned to appellant. These assignments were recorded April 24, 1933. Both were made without the knowledge or consent of appellees.

There can be no doubt but that the assignments constituted a breach of the covenant contained in the rider. That appellant itself so regarded them is evidenced by the fact that, after the assignments had been made, it wrote to appellees advising them of the transfers and requesting that consent be given. Appellees protested the assignments and asserted that the lease had become forfeited by reason thereof. Subsequently, formal written demand was made on appellant for the cancelation of the lease of record because of this breach.

There was a provision in the instrument for its automatic termination as to both parties if drilling was not begun within a specified time, unless delay rentals were paid.[2] There was no express provision for termination in the event of the violation of other terms. Appellant's counsel argues vigorously that the stipulation relative to assignment was not a condition but a covenant, and that the breach of the stipulation did not give rise to a right of reentry but only to a cause of action in damages. However, in the light of the Montana decisions bearing on the question, we are constrained to hold the contrary.

Oil and gas leases deal with property of a highly speculative nature, and the protection of the interests of the lessor is considered of paramount importance. In Solberg v. Sunburst Oil Company, 76 Mont. 254, 246 P. 168, it is declared that [page 172] "the well-known rules of construction of contracts have, in case of oil and gas leases, been modified to meet the new conditions arising by reason of the new industry, and such modification is necessary for the protection of the interests of the landowner and of the public generally." The Montana courts have consistently declared that in connection with such leases forfeitures are favored by the law. "Defendants argue that the courts view forfeitures with disfavor and will enforce them only when the strict letter of the contract requires it. This is a correct statement of a general principle of law, but in connection with oil and gas leases, forfeitures are fa-

[1] See applicable statutes, §§ 6902 to 6904, Revised Codes of Montana, 1921.

[2] The lease was an "unless" lease, McDaniel v. Hager-Stevenson Oil Co., 75 Mont. 356, 243 P. 582. See discussion of distinction between "unless" and "or" leases in Thornton, Law of Oil and Gas (5th Ed.) § 124.

vored by the law." Berthelote et al. v. Loy Oil Co., 95 Mont. 434, 28 P.2d 187, 190. "It is a recognized doctrine in this court that oil and gas leases are to be construed liberally in favor of the lessor and strictly against the lessee." McDaniel v. Hager-Stevenson Oil Co., 75 Mont. 356, 366, 243 P. 582, 586. Other cases dealing with the general subject are cited on the margin.[3]

The rule in vogue is not merely to the effect that express provisions for forfeiture will be strictly enforced. An implied right of forfeiture will be enforced with equal strictness. For example, in Berthelote v. Loy Oil Co., supra, it was claimed that the lease involved (it was an "unless" lease) had terminated by reason of the breach of certain implied covenants, one of which was a covenant to market the gas discovered. The only express provision for termination had to do with the failure to drill or to bring in a producing well. But it was held that it was the implied duty of the lessee to proceed with reasonable diligence to bring the product to a present market, and that default in the performance of such duty gave rise to a right of forfeiture.

It is said that the state decisions deal with conditions or covenants, express or implied, relating only to the development of the leased premises. The contention is not correct, as has just been seen, and the broad principles declared in the cases are not in terms limited to such stipulations. Without undertaking a further review of the local authorities, it is enough to say that we understand the rule to be that an oil and gas lease will be regarded as terminable upon breach of a covenant, express or implied, if the interests of the owner are substantially prejudiced thereby.

[6] Through breach of the covenant against assignment, broadly construed, the owner may be said to risk defeat of the object for which the lease was given. We cannot say that such covenant is to be treated as of less dignity or importance than implied covenants of diligence in operation or in marketing, or that it is any the less to be regarded as a condition. Experience with an unauthorized assignee may prove fortunate or unfortunate, as the case may be; but it would seem, under the general policy indicated, that the owner is not bound to await the event. When an assignment, to which he does not consent, has been effected, he has the present right of treating the assignee as an interloper and of declaring the lease at an end.

In the present situation it is difficult to discover any adequate alternative remedy. The appellant claims that it has not violated the covenant against assignment, since the covenant was not made by it but by its assignor. Assuming this to be correct, it would seem to follow that appellant cannot be held in damages because of the breach. The record discloses that the original lessee, the Mid-Northern Oil Company, was dissolved in November, 1932, before knowledge of the assignment was brought home to the lessors. While appellant claims that the owners' remedy is in damages, it has failed to point out the party against whom such remedy can be asserted.

2. Appellant contends that the right to declare a forfeiture, if any such right existed, was waived by the lessors' acceptance of royalties. The argument is based on the circumstance that appellees, after learning of the assignment, cashed three small royalty checks sent them by appellant, and retained others covering subsequent royalties. The checks cashed were issued in payment of royalties accruing over a period of three months after the date of the assignment.

The trial court found that appellees at all times protested the assignments and refused to recognize appellant as the owner of the lease. It was found that in cashing the royalty checks appellees did not intend to waive the violation of the condition against assignment or the right to forfeit the lease; and that appellant was not prejudiced or misled by appellees' conduct, and its position was in no way changed.

These findings are amply supported by the evidence. Within a few days after receiving notice of the assignments, appellees' attorneys wrote to appellant saying that the breach of the lease had made it subject to cancelation. The letter went on to say that "if you will send a release and cancelation for Mr. Guertzgen's lease, he will then take up the matter of giving you another one. Unless this is done, it will be necessary to prepare and send to or serve upon you a notice preparatory to bringing suit to cancel this lease." In September, 1933 the attorneys again wrote ap-

---

[3] McNamer Realty Co. v. Sunburst Oil Co., 76 Mont. 332, 247 P. 166; Bowes v. Republic Oil Co., 78 Mont. 134, 252 P. 800; Thomas v. Standard Development Co., 70 Mont. 156, 224 P. 870; Williard v. Campbell, 91 Mont. 493, 11 P.2d 782.

pellant demanding formally the cancelation of the lease because of the assignment. There were other letters of similar import, accompanied by efforts to induce appellant to withdraw from the property. Ultimately, appellees closed the gates and attempted .to exclude appellant from access to the premises.

■ A waiver is defined as the intentional relinquishment of a known right. Where the waiver is predicated on conduct, the elements of an estoppel are almost invariably present. Here, appellant was not left in doubt concerning the lessors' purpose, nor is there any showing that its position was changed in reliance on the lessors' conduct. To sustain its argument it would be necessary to hold, as a matter of law, that the cashing of the three royalty checks, and the retention of others, with knowledge of the breach, constituted, without more, a waiver of the right to declare a forfeiture. There is little rational basis for such view and it finds no extensive support in the authorities.

■ This case, unlike some others found in the books, does not involve the mere passive acceptance of rents. It is urged, however, that the owners "cannot eat their cake and keep it"; that their acceptance of royalties belied their .declared purpose to treat the lease as terminated. We think the·inconsistency is more apparent than real. In Miller v. Reidy, 85 Cal.App. 757, 260 P. 358, and in Batley v. Dewalt, 56 Wash. 431, 105 P. 1029, where the right of forfeiture was held waived despite protestations, there was an acceptance of advance rentals. The acceptance of rentals in advance would seem to constitute an express recognition of the continued effectiveness of the lease contract, at least for the period covered by the advance payment. The acceptance of accrued royalties, however, involves no comparable legal implication. In the present instance, the lessors received no more, but rather less, than they were entitled to demand from the wrongdoer in possession.

A leading authority relied on by appellant is Kern Sunset Oil Co. v. Good Roads Oil Co., 214 Cal. 435, 6 P.2d 71, 72, 80 A. L.R. 453. The case does not support appellant's position. In holding that the right to enforce a forfeiture had been waived, the court there pointed out that for a period of over five years after the claimed breach of the terms of the lease, and before notice of forfeiture had been given, the lessor had accepted royalties payable under the lease, without making any complaint whatever. It further appeared that during this time the lessee's position had substantially changed to its detriment. McKildoe's Ex'r v. Darracott, 13 Grat., Va., 278, also relied on, is clearly distinguishable on its facts. The case of Gulf, C. & S. F. Ry. Co. v. Settegast, 79 Tex. 256, 15 S. W. 228, appears to support appellant's position, but we regard the holding as extreme.

3. Appellant complains of the award of an attorney's fee, on the ground that there was no proof in support of the award. The argument is based on the proposition that, under § 6903 of the Revised Codes of Montana, 1935, attorneys' fees are an item of damage, and, as such, must be proved at the trial. The statute is copied in the footnote.[4]

It is conceded that in actions .where an attorney's fee is recoverable as a matter of course, the court is permitted to act upon its own knowledge as to the value of the attorney's services, but it is contended that, in the light of the final sentence in the statute, the question of attorneys' fees is converted into an issue of fact upon which evidence must be taken.

■ We think the point is without merit. The statute does not require a construction upsetting the generally accepted rule that a judge is permitted to appraise the legal services of counsel without, or independent of, any testimony on the subject. 7 C.J.S. 1093, 1094, Attorney and Client, § 191. The rule in Montana is not shown to be to the contrary. See Severson v. Bar-

---

4 "Should the owner of such lease neglect or refuse to execute a release as provided by this act, then the owner of the leased premises may sue in any court of competent jurisdiction to obtain such release, and he may also recover in such action of the lessee, his successor or assigns, the sum of one hundred dollars as damages, and all costs, together with a reasonable attorney's fee for preparing and prosecuting the suit, and he may also recover any additional damages that the evidence in the case will warrant. In all such actions writs of attachment may issue as in other cases. If, in such action, the plaintiff fails to establish the forfeiture of the lease, an attorney's fee must be allowed to the holder of the lease. Issues in regard to such fees shall be determined in the same manner as other issues in such actions."

stow, 103 Mont. 526, 527, 63 P.2d 1022. The statute indicates that recovery of attorneys' fees in this class of actions is allowable as of course. The lessee, himself, must be allowed an attorney's fee in the event the lessor fails to establish a forfeiture.[5] No reason appears why the taking of evidence on the question is any more necessary in this sort of case than in any other.

◼ 4. Henrietta Guertzgen, lessor's wife, was not made a party to the suit, and did not join in the cross-complaint. Her name, however, was included as a party to the decree. To safeguard any possible prejudice to the appellant, the decree should be modified by striking the name of Henrietta Guertzgen from the caption and by making necessary corresponding changes in the verbiage of the decree itself.

Otherwise the decree is affirmed. Costs are awarded to appellees.

WILBUR, Circuit Judge (dissenting).

I dissent. The above mentioned agreement not to assign the lease without the written consent of the landlord is in form a covenant. There is no agreement that the lease will terminate upon making such an unauthorized assignment, nor for right of reentry for the violation of this covenant and no agreement that such assignment shall operate as forfeiture of the rights of the lessee. 35 C.J. 1189, § 489. Under these circumstances, I think it is going beyond the decisions of the Supreme Court of Montana, cited in the main opinion, to read into the lease a provision for its forfeiture for such unauthorized assignment and to enforce the agreement for forfeiture thus interpolated into the lease. If the lease had provided for a forfeiture for such unauthorized assignment then it is clear under the decisions of the Montana Supreme Court cited in the main opinion that such an agreement in an oil lease is to be liberally, rather than strictly, construed.

If it were the intention of the parties that the assignment without the written consent of the landlord should work a forfeiture, it would have been an easy matter to have said so. In the absence of such an agreement the law provides that the landlord may recover the damages suffered by reason of the unauthorized assignment. It is immaterial that there may be now no one in existence against whom the remedy for damages may be enforced.

The statutes of Montana relating to unlawful detainer expressly provide for the termination of a lease after three days notice for breach of the covenant not to assign without the written consent of the landlord. Rev.Codes Montana, Code of Civ.Proc. § 9889, subs. 3, 4; cf. Jameson v. Chanslor-Canfield M. Oil Co., 176 Cal. 1, 167 P. 369, dealing with identical provisions of the law of California. These statutes also provide for a relief from such forfeiture in the interests of justice even after an adjudication against the tenant. Rev.Codes Montana, § 9906. These provisions of the Montana Code are relied upon by the appellee, but by express terms of the statute have no application to leases for life or longer than life. Rev.Code Mont., supra, § 9889. Consequently, they have no application here where the tenant, who has a right to continue to occupy the premises and produce oil and gas therefrom so long as the supply holds out in commercial quantities, has an estate in the nature of a determinable fee. See Dabney v. Edwards, 5 Cal.2d 1, 53 P.2d 962, 103 A.L.R. 822; Watford Oil & Gas Co. v. Shipman, 233 Ill. 9, 84 N.E. 53, 122 Am.St.Rep. 144.

The judgment should be reversed.

---

[5] The statute, as originally enacted, did not provide an attorney's fee for defendant. In Solberg v. Sunburst Oil & Gas Co., 73 Mont. 94, 235 P. 761, it was held unconstitutional (insofar as it related to attorneys' fees) on the ground that it denied the equal protection of the laws under the 14th Amendment, U.S. C.A.Const. Amend. 14, the provision for attorneys' fees not being reciprocal. Later, in 1929, the statute was amended so as to meet this objection.